IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| EARNEST M. MAYERS, | ) Civil Action No. 3:09-2635-CMC-JRM |
| Plaintiff, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| vs. | ) |
| SHAW INDUSTRIES, | ) |
| Defendant. | ) |

Plaintiff, Earnest M. Mayers ("Mayers"), filed this action on October 8, 2009. He appears to allege claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq. and Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq.[1] Defendant, Shaw Industries ("Shaw") filed a motion to dismiss on May 3, 2010. Mayers, because he is proceeding pro se, was advised on May 5, 2010, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Shaw's motion to dismiss could result in the dismissal of his complaint. Mayers filed a response on June 8, and Shaw filed a reply on June 16, 2010.

**STANDARD FOR MOTION TO DISMISS**

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972) and Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(g), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.

When considering a 12(b)(6) motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999). The United States Supreme Court recently stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, __ U.S. __, __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" Iqbal, __ U.S. at __, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

**FACTS IN THE LIGHT MOST FAVORABLE TO PLAINTIFF**

1. Mayers was employed by Shaw as a mechanic in the company's Irmo, South Carolina facility for approximately 33 years. See Complaint, Para. 1.

2. In early 2005, Mayers reported lock out tag out ("LOTO") safety violations in the Zip Area (where he worked as a Mechanic III), to Maintenance Supervisor Larry Jones ("Jones"). Jones told Mayers that it was a production issue. Complaint, Para. 2.

3. Mayers called the Shaw "1-800-Number" to report these alleged safety issues in late 2005. Complaint, Para. 3.

4. Thereafter, Mayers was "working in a hostile area." Shaw employee Glenn Dixon began writing down everything Mayers did and Evert Newbry (the supervisor of the Zip Area) began harassing Mayers. Complaint, Para. 4.

5. In November 2006, after Mayers asked why a Mechanic III working his shift made more money than he did, he was called to a meeting with his supervisor Johnny Butch McCray ("McCray"), the HR manager, Jones, and Foreman Ronnie Floyd. In the meeting, Mayers was accused of being insubordinate and was accused of having a weapon in his bag (which was actually a Bible). While in the office, an email from Dixon was received which detailed his observations of Mayers every day for a year. Newbry stated to McCray that he did not want Mayers in the Zip Area as a mechanic. Complaint, Paras. 5-9.

6. In 2007, Shaw showed Mayers a race diversity film in which a "young white kid was shown using the word (Nigger)[.]" Complaint, Para. 17.

7. On January 8, 2008, Mayers was terminated from Shaw by Newbry and McCray. He was told that it was for a violation of LOTO policy. Mayers asserts that the policy Shaw claims he violated was one his plant "made up," rather than a Shaw policy. Complaint, Paras. 18-19.

8. Mayers was replaced by a younger employee who was paid $2.00 per hour less. Complaint, Para. 22.

9. Four other persons were working on the same panel as Mayers, but none of them were fired, Additionally, none of the employees on the machine next to his, which also was not locked out, were terminated. Complaint, Para. 24.

10. On June 22, 2009, the South Carolina Human Affairs Commission issued a right to sue notice. The Equal Employment Opportunity Commission issued a right to sue notice to Mayers on July 10, 2009. It appears that Mayers asserted claims under Title VII and the ADEA in his Charge. See Attachment to Complaint.

## **DISCUSSION**

Mayers appears to allege that he was subjected to a hostile work environment; was retaliated against based on his age, race, and/or for reporting safety violations; and was terminated based on his age, race, and/or for reporting a safety violation. He also appears to allege a claim for disparate treatment and/or discipline based on his race. Shaw contends that Mayers' harassment claims, retaliation claims, and ADEA claims should be dismissed because Mayers has only alleged a single purported incident of harassment, Mayers has not alleged that he engaged in protected activity related to age or race, and Mayers has not alleged that age discrimination was the sole factor that motivated his employer. In his opposition memorandum, Mayers discusses alleged workplace safety infractions and has attached correspondence (dated after Mayers termination) to and from the South Carolina Department of Labor, Licensing, and Regulation, Division of Labor - OSHA. In response, Shaw argues that Mayers has failed to refute, counter, or address its asserted legal justifications requiring dismissal.

A. <u>Harassment</u>

Mayers appears to allege that he was subjected to a hostile work environment. Shaw contends that Mayers has alleged only a single purported incident to support his harassment claim which falls short of the standard necessary to plead and prove a workplace harassment claim. Mayers did not respond to this argument.

To make out a hostile work environment claim under Title VII or the ADEA, a plaintiff must adduce evidence that "(1) he experienced unwelcome harassment; (2) the harassment was based on his race [or age]; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." <u>Baqir v. Principi</u>, 434 F.3d 733, 745-46 (4th Cir. 2006)(citing <u>Bass v. E.I. DuPont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir. 2003)).

Here, any claim for harassment based on age should be dismissed because Mayers has not made any allegations of harassment based on his age. "[C]onclusory statements, without specific evidentiary support, cannot support an actionable claim for harassment." <u>Causey v. Balog</u>, 162 F.3d 795, 802 (4th Cir.1998).

Mayers' claim for harassment based on his race should be dismissed because he has not alleged severe and pervasive harassment based on his race. He cannot show that the playing of the diversity training video in which an actor on one occasion used a racial slur constitutes severe and pervasive conduct. <u>See</u> <u>Robinson v. Montgomery Ward and Co., Inc.</u>, 823 F.2d 793, 797 (4th Cir.1987), <u>cert. denied</u>, 484 U.S. 1042 (1988)("occasional or sporadic instances of the use of racial or ethnic slurs in and of themselves do not constitute acts of racial discrimination."); <u>Snell v. Suffolk County.</u>, 782 F.2d 1094, 1103 (2d Cir. 1986) ("To establish a hostile atmosphere, ... plaintiffs must

prove more than a few isolated incidents of racial enmity"); Johnson v. Bunny Bread Co., 646 F.2d 1250, 1257 (8th Cir. 1981) (no violation of Title VII from infrequent use of racial slurs).

Additionally, Mayers has not shown that any of the other alleged harassment, including another worker writing down his actions, his being called into a meeting after questioning coworkers pay rates, his not being able to use his cell phone, his not being able to take breaks, McCray asking him about his health issues, and the failure to give him some bereavement time, were based on his race and/or age. See Nichols v. Caroline County Bd. of Educ., 123 F. Supp. 2d 320, 327 (D. Md.)(black plaintiff's assertion that white supervisors subjected him to adverse employment actions "because I am who I am" insufficient; the court "cannot attribute a racial character to the disagreement and misunderstandings between the parties based merely on [plaintiff's] conjectural opinion."); Sharafeldin v. Maryland Dep't of Pub. Safety, 131 F.Supp.2d 730, 741-43 (D.Md. 2001); see also Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003)(evidence of workplace disagreements between supervisors and subordinates concerning job duties and performance and of callous and insensitive treatment by supervisors is not sufficient to prove alleged harassment was based on plaintiff's race).

B.   Retaliation

Mayers appears to allege that he was terminated in retaliation for his complaint about the lack of compliance by other employees with safety rules.[2] Shaw contends that this claim should be dismissed because Mayers has not alleged that he engaged in any protected activity that was based

---

[2] The South Carolina Whistleblower Act establishes a private cause of action to any "employee" of a "public body" who suffers retaliation because he makes a "report" of waste or "wrongdoing" by the public body or its employees to an "appropriate authority." S.C. Code Ann. § 8-27-10 et seq. To the extent that Mayers is attempting to assert a claim under the South Carolina Whistleblower's Act, his claim fails as he has not alleged that Shaw is a "public body" under the Act.

on his age and/or race. Mayers has not responded to this argument, other than to reiterate his claim that he was retaliated against for reporting alleged safety violation(s).

To establish a prima facie case of retaliation under Title VII or the ADEA, an employee must demonstrate that:

1) the employee engaged in protected activity;[3]

2) the employer took some adverse employment action against the employee; and

3) a causal connection existed between the protected activity and the adverse action.

See Haulbrook v. Michelin North America, Inc., 252 F.3d. 696, 706 (4th Cir. 2001)(ADA); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998)(ADEA and Title VII); Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994)(Title VII).

Mayers' retaliation claims should be dismissed because he has not alleged that he engaged in an activity protected by Title VII or the ADEA. See McNair v. Computer Data Sys., Inc., 172 F.3d 863, 1999 WL 30959, at *5 (4th Cir. Jan. 26, 1999)(unpublished)([T]the 'opposition clause,' by its very terms, requires that the employee at least have actually opposed employment practices made unlawful by Title VII. That is to say, the clause protects opposition neither to all unlawful employment practices nor to practices the employee simply thinks are somehow unfair."); Godon v. N.C. Crime Control & Pub. Safety, 141 F.3d 1158, 1998 WL 193109 at *3 (4th Cir.1998)(unpublished)(upholding dismissal of retaliation claim because disagreement with

---

[3]Under Title VII, a plaintiff need not have filed a formal complaint with the Equal Employment Opportunity Commission or a state deferral agency to engage in a protected activity. Complaints to supervisory or management employees concerning harassment or discriminatory treatment as well as informal complaints, filing of internal grievances, and complaints to an agency are included within the definition of protected activity. Warren v. Halstead Indus., Inc., 802 F.2d 746 (4th Cir. 1986), cert. denied, 487 U.S. 1218 (1988) and Mitchell v. Baldrige, 759 F.2d 80 (D.C. Cir. 1985).

disciplinary practices does not constitute opposition to unlawful employment practices); Barber v. CSX Distrib. Servs., 68 F.3d 694, 702 (3d Cir.1995)(in an ADEA case, "a general complaint of unfair treatment does not translate into a charge of illegal age discrimination"). Here, the only protected activity which Mayers identifies is the reporting of alleged safety violations to his employer.[4] Mayers cannot show that his reporting of an alleged safety violation amounts to protected activity under Title VII or the ADEA. See Creusere v. Bd. of Educ., 88 Fed.Appx. 813, 821 (6th Cir. Dec.18, 2003) (unpublished) (noting that complaints about smoking policy and safety issues are not protected activities under Title VII); Harper v. Hunter College, City University of New York, 162 F.3d 1147, 1998 WL 639397 (2nd Cir. 1998)(unpublished)(Complaining about job safety to one's own employer is not a protected activity under Title VII).

    C.    Age Discrimination

Mayers appears to allege that he was terminated, at least in part, based on his age. He specifically claims that he was replaced by a younger worker. Complaint at 6. Shaw contends that this claim should be dismissed because Mayers has not alleged that age discrimination was the sole factor that motivated his termination.

"[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." Gross v. FBL Financial Services, Inc., __ U.S. __, 129 S.Ct. 2343, 2352 (2009). Under the alternative burden-shifting method of proof of McDonnell Douglas Corp. v.

---

[4] He has submitted information showing that he reported alleged safety violations to a South Carolina agency after the time he was terminated.

Green, 411 U.S. 792 (1973),[5] a plaintiff may establish a prima facie case of age discrimination under the ADEA by showing that: (1) he is a member of the protected class; (2) his employer took an adverse employment action against him; (3) he was performing her job to the legitimate expectations of his employer; and (4) he was either replaced by someone outside the protected class or similarly-situated employees outside of his protected class were treated more favorably. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004).

Although the Supreme Court in Gross held that the ADEA does not authorize a mixed-motive age discrimination claim (Gross, 129 S.Ct. at 2350), the decision does not support Shaw's argument that Mayers must show that his age was the "sole" reason for the adverse employment action. Instead, the Supreme Court in Gross reiterated that a plaintiff must show that age was the "but-for" cause of the adverse employment action. Id. at 2351; see also Jones v. Oklahoma City Public Schools, 617 F.3d 1273 (10th Cir. 2010)("Gross does not disturb longstanding Tenth Circuit precedent by placing a heightened evidentiary requirement on ADEA plaintiffs to prove that age was the sole cause of the adverse employment action." The undersigned, however, recommends that Mayers' ADEA termination claim be dismissed because Mayers has not alleged that age was the "but for" cause of his termination. Mayers did not address Shaw's arguments concerning his age claim, but continues to assert he was terminated for reporting a safety violation; that other Shaw employees who violated safety rules were not terminated; and that other Shaw employees were given second

---

[5]The Supreme Court also noted that it "has not definitively decided" whether the McDonnell Douglas framework, first developed in the context of Title VII cases, "is appropriate in the ADEA context." Gross, 129 S.Ct. at 2349 n.2. In the absence of further direction from the Supreme Court, the undersigned must follow Fourth Circuit precedent, which applies the McDonnell Douglas framework to ADEA claims. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004)

9

chances after committing safety violations, but he was terminated. In his complaint, Mayers' allegations that others were not terminated or were disciplined less severely for safety violations are based on race (not age). Although Mayers asserted that he was replaced by a younger worker, he has not alleged that "but for" his age he would not have been terminated.

## CONCLUSION

Based on the foregoing, it is recommended that Defendant's motion to dismiss (Doc. 9) Plaintiff's hostile work environment, retaliation, and ADEA claims be **granted**.[6]

Joseph R. McCrorey
United States Magistrate Judge

November 23, 2010
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

---

[6] If this report and recommendation is adopted by the District Judge, only Plaintiff's Title VII disparate discipline and/or disparate treatment claims would remain.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).