IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| EARNEST M. MAYERS, | ) Civil Action No. 3:09-2635-MBS-JRM |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) **ORDER** |
| | ) **AND** |
| SHAW INDUSTRIES, | ) **REPORT AND RECOMMENDATION** |
| | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

Plaintiff, Earnest M. Mayers ("Mayers"), filed this action on October 8, 2009. In his Complaint, he asserted claims for age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA"). He also asserted claims for race discrimination, retaliation, and race harassment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII").[1] Defendant Shaw Industries ("Shaw") filed a motion to dismiss, and on December 14, 2010, the Honorable Cameron M. Currie, United States District Judge, dismissed Mayers' claims under the ADEA and his claims for retaliation and harassment under Title VII.[2] Shaw filed a motion for summary judgment on June 6, 2011. Mayers, because he is proceeding pro se, was advised on June 8, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Shaw's motion for summary judgment could result in the dismissal of his

---

[1]Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(g) DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

[2]The case was reassigned to the Honorable Margaret B. Seymour, United States District Judge, on October 21, 2011.



complaint. Mayers filed a response on June 17, 2011, and Shaw filed a reply on August 1, 2011. Mayers filed an untimely sur-reply on August 26, 2011.[3] A hearing on Defendant's motion for summary judgment (as well as other pending motions) was held before the undersigned on October 26, 2011.[4] Shaw filed a supplemental response to oral arguments on October 28, 2011.

## FACTS

1. Mayers, an African-American male, was employed by Shaw as a mechanic in the company's Irmo, South Carolina (St. Andrews Road) facility for approximately 33 years. See Complaint, Para. 1.

2. He worked as a Mechanic III in the Zip Department, where his duties consisted of repairing machines. Plaintiff Dep. 25.

3. At all times relevant to this action, Everett Newberry ("Newberry"),[5] a white male, supervised Mayers; Larry Jones ("Jones"), a white male, managed Mayers' department; and Johnnie "Butch" McCray ("McCray"), an African-American male, served as Senior Human Resources Manager at the St. Andrews Road facility. See Defendant's Motion for Summary Judgment at 4.

---

[3]The undersigned has considered Mayers' sur-reply in preparing this report and recommendation.

[4]At the hearing, the undersigned denied Mayers' May 11, 2011 motion to compel because it was untimely filed (see Local Civil Rule 37.01 DSC) and because Shaw substantially complied with his discovery requests; denied Mayers' August 30, 2011 motion to compel as untimely, as it was filed approximately more than three months after the end of the discovery period; granted Mayers' motion to reinstate this action; and ordered that certain settlement negotiation documents be placed under seal.

[5]Mayers refers to this employee as "Newbry" in his deposition and pleadings.

2



4. Shaw had lock out tag out ("LOTO") procedures that required mechanics to completely shut down any machine under repair to comply with the Occupational Safety and Health Administration's applicable rules and to protect the mechanic from kinetic, electrical, thermal, and hydraulic energy. Chris Wisner ("Wisner") Aff., Para. 12; McCray Aff., Para. 12; see Plaintiff Dep. 35-36.

5. In early 2005, Mayers reported LOTO safety violations in the Zip Area (where he worked as a Mechanic III), to Maintenance Supervisor Jones. Jones told Mayers that it was a production issue. Complaint, Para. 2.

6. Mayers called the Shaw "1-800-Number" to report these alleged safety issues in late 2005. Complaint, Para. 3.

7. Thereafter, Mayers believed he was "working in a hostile area." He claims that Glen Dixion ("Dixion"), a Shaw employee, began writing down everything he did and that Newberry began harassing him. Complaint, Para. 4.

8. In November 2006, after Mayers asked why a Mechanic III working his shift made more money than he did, he was called into a meeting with McCray, Jones, and Foreman Ronnie Floyd. In the meeting, Mayers was accused of being insubordinate and of having a weapon in his bag (which Mayers states was a Bible). While in the office, an email from Dixion was received which detailed his observations of Mayers every day for a year. Newberry stated to McCray that he did not want Mayers in the Zip Area as a mechanic. Complaint, Paras. 5-9.

9. Mayers was shown a diversity training video in 2007 in which an actor uttered a racial slur (the "N" word). Complaint, Para. 17.



10. In January 2008, McCray received notice that Mayers, while repairing a machine, failed to shut it down and tag it out. McCray investigated the allegations by meeting with and/or interviewing Mayers, Newberry, Process Engineer Clyde Turner, Shift Supervisor Alonzo Eichelberger, Extrusion Operator Mike Hammond, Extrusion Operator Roderick Scott, Operator Jackie Robinson, and Maintenance Mechanic Daryl Dewayne Taylor. Wisner Aff., Para. 19; McCray Aff., Para. 19.

11. During the investigation, Mayers admitted he was at fault and did not properly lock out the machine in violation fo the LOTO procedures. Plaintiff Dep. 56; see also Wisner Aff., Para. 20; McCray Aff., Para. 20.

12. Mayers was terminated from Shaw for a violation of the LOTO Policy. See Complaint, Paras. 18-19.

13. Other persons working on the same panel were not terminated. Complaint, Para. 24.

14. On June 22, 2009, the South Carolina Human Affairs Commission issued a right to sue notice. The Equal Employment Opportunity Commission issued a right to sue notice to Mayers on July 10, 2009. See Attachment to Complaint.

**STANDARD FOR SUMMARY JUDGMENT**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). A fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. Anderson, 477



U.S. 242 at 248. "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

The defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48).

"[O]nce the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (1) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (2) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c) (1)(A-B).

Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Servs. Co., 80 F.3d 954 (4th Cir. 1996). If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the



fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e)(1-4).

## **DISCUSSION**

The only claim remaining in this action is the Title VII allegation that Shaw discriminated against Mayers based on his race by subjecting him to disparate treatment/disparate discipline. Shaw argues that its motion for summary judgment should be granted because: (1) Mayers fails to prove a prima facie case of discrimination; (2) he fails to rebut Shaw's legitimate, non-discriminatory explanation for his termination, (3) he fails to show pretext; and (4) his receipt of Social Security Disability Insurance benefits estops him from seeking relief for back pay and front pay under Title VII.[6]

A.   Disparate Treatment

Mayers appears to allege that he was terminated based on his race. Title VII makes it "an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may proceed under ordinary principles of proof using direct or indirect evidence, or, in the absence of direct proof of a defendant's intent

---

[6]As it is recommended that Mayers' Title VII claim be dismissed because he fails to establish a prima facie case and fails to show that Shaw's legitimate, non-discriminatory reason for its actions is pretextual, it is not necessary to address Shaw's estoppel argument.

6



to discriminate,[7] a plaintiff can employ the scheme outlined in McDonnell Douglas v. Green, 411 U.S. 792 (1973) to establish a prima facie case of discrimination by offering proof that:

(1)   he is a member of a protected class;

(2)   he was performing his job in a satisfactory manner;

(3)   he was subjected to an adverse employment action; and

(4)   the alleged adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination.

See Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007); White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004); McDonnell Douglas, 411 U.S. at 802. McDonnell Douglas provides that, once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory basis for the challenged employment action. McDonnell Douglas, 411 U.S. at 802. If the employer provides the required evidence of a nondiscriminatory reason for the action, the plaintiff must then show that the proffered reasons were not the true reasons for the employment action, but were a pretext for discrimination. Id. at 804; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

(1)   Prima Facie Case

Shaw argues that Mayers fails to establish a prima facie case of disparate treatment because he has not shown that he was performing his job satisfactorily and he has not

---

[7]Mayers has presented no direct evidence of discrimination. The Fourth Circuit defines "direct evidence" as evidence that the employer "announced, admitted, or otherwise indicated that [the forbidden consideration] was a determining factor..." Cline v. Roadway Express, Inc., 689 F.2d 481, 485 (4th Cir. 1982) (citing Spagnuolo v. Whirlpool Corp., 641 F.2d 1109, 1113 (4th Cir.), cert. denied, 454 U.S. 860 (1981)). In other words, direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995), abrogated on other grounds, Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003).



shown an inference of unlawful discrimination. The company does not dispute that Mayers meets the other two prongs of his prima facie case (that he is a member of a protected class and was subjected to the adverse employment action of termination).

      (a)     <u>Job Performance</u>

Shaw contends that Mayers fails to show that he was performing his job satisfactorily at the time of his termination because he knowingly violated Shaw's LOTO procedures. Mayers states that after he reviewed Shaw's safety policies and talked to the safety manager, he determined that he "was fired for nothing at all but spite or revenge." Plaintiff's Opp. Mem. at 2. He also claims that his bosses told him to do maintenance work without following the LOTO policies to keep production going. Additionally, Mayers argues that the machine operator should have locked out the machine (such that it was not his responsibility to do so). In support of his arguments Mayers only offers his own opinion that there was not a safety violation. Mayers testified at his deposition, however, that at the time of the investigation he admitted he violated the LOTO policy. Plaintiff's Dep. 56-57. Further, Mayers has not presented anything to dispute that Shaw believed he violated the LOTO policies at the time he was terminated.

      (b)     <u>Inference of Unlawful Discrimination</u>

Shaw argues that Mayers fails to prove that its actions raised an inference of unlawful discrimination because: (1) the undisputed evidence showed that Shaw acted without discriminatory animus or intent; (2) it never treated any similarly-situated employee better than it treated him; (3) and Mayers admitted that his termination resulted, not from race discrimination, but because of other factors. In his opposition memorandum, Mayers appears to argue that he has shown an inference of unlawful discrimination because Jim Mullins ("Mullins"),



a white mechanic, was transferred to another area and Mayers' request for a transfer was denied; McCray did not allow Mayers to use his cell phone at work (which he needed to do because he had relatives including a grandchild in the hospital), but other people were allowed to use their cell phones; McCray refused to allow him some funeral leave; McCray threatened to call the police on him; a foreman followed Mayers around after he called the 1-800 number and reported safety problems; and Mayers was shown the video which contained a racial slur. In his sur-reply, Mayers for the first time alleges that Newberry used the "N" word. He also claims that he was the only employee that was not allowed to have break time.

Mayers fails to show that his termination occurred under circumstances that raise a reasonable inference of unlawful discrimination. When asked who discriminated against him based on race he stated McCray (who is also African-American) and could not think of anyone else. Plaintiff's Dep. 27. Plaintiff further stated that he could not think of anything besides what McCray did or said that was race discrimination. Plaintiff's Dep. 28. Mayers claims racism based on "the way [McCray] treated me" (Plaintiff's Dep. 28) including that McCray "was dogging me every time" (Plaintiff's Dep. 29), McCray told him he could not take a break and could not use his cell phone (Plaintiff's Dep. 30-31), McCray took part in the following him around after the 1-800 call (Plaintiff's Dep. 31), and McCray threatened to "call the cops on [Mayers]" (Plaintiff's Dep. 31). He, however, fails to point to anything about these alleged actions that was based on his race. Mayers specifically stated that he had no idea if McCray treated white mechanics better than he treated Mayers. Plaintiff's Dep. 30. When asked further about what he thought was race discrimination, Mayers stated "I cannot answer that because I don't know what's on a man's mind." Plaintiff's Dep. 42.



Mayers testified that financial or other conditions (as opposed to race) motivated the decision to terminate him. Specifically, he testified:

> Personally, I'm going to be honest with you, and this may [] blow my case. I really don't think it had lot to do with Shaw. I think it had a lot to do with Honeywell [8] employees that had axes to grind.

Plaintiff's Dep. 42-43. Mayers also stated that "sometimes the money issue had a lot to do with the way some of the Shaw management thought." Plaintiff's Dep. 44. Mayers testified that his problems with Newberry had a lot to do with the 1-800 call because the safety issues meant stopping production which was a money issue. Plaintiff's Dep. 26-27, 78. Although Mayers claims that Newberry said Mayers needed to work on equipment without following the LOTO procedures, he admits that white mechanics were told the same thing. Plaintiff's Sur-Reply at 12. Mayers further stated that with Newberry "it wasn't about race. It was about, 'You dipping into my money.'" Plaintiff's Dep. 27-28. When asked why the company treated him differently than other employees, Mayers stated that "I still think it goes to the 800 number." Plaintiff's Dep. 68. Asked whether he contended that Shaw discriminated against him, not because he is African-American, but because he previously reported a safety violation, Mayers answered: "In the safety incident. In the other incidents, I cannot answer that." Plaintiff's Dep. 80.

Although Mayers claims that James Stockman, a white mechanic, was allowed to work more overtime which resulted in more pay and more vacation time, Mayers testified that when he brought this to management's attention, Mayers was assigned more overtime. Plaintiff's Dep. 53-54. He further testified that he did not think it was a black-white issue, just a favoritism issue. Plaintiff's Dep. 25.

---

[8]It appears that Shaw is Honeywell's successor.

10



Although Mayers claims that Mullins was transferred to another department, and he was not, he also acknowledges that the move of Mullins occurred after Mullins was demoted from Mechanic IV to Mechanic III. Further, Mayers has presented no specifics concerning his request for a transfer. He has not shown that Mullins was given the position Meyers requested, and has not shown that a position to transfer Mayers to was open or available.

Mayers fails to point out to any racial basis for his allegedly not being able to take breaks, use his cell phone, or take funeral leave. He appears to assert that everyone in the plant (i.e. employees of all races) were allowed these privileges, but he was not. Also, Mayers has not shown that allegedly being followed or McCray allegedly threatening to call the police when Mayers went to McCray's office was based on Mayers' race.

Although he claims in his sur-reply that Newberry used a racial slur, he did not allege this in his complaint, did not testify to this in his deposition, and did not assert this until he untimely filed his sur-reply. Mayers testified, in response to a question of whether he thought it mattered to Newberry that Mayers was African-American, "I think it mattered to Mr. Newberry [] that I reported a safety issue. That's it." Plaintiff's Dep. 58. Additionally, in his sur-reply, Mayers stated that he believed that he was fired because he called the 1-800 number thus putting Newberry's job in danger such that Newberry's attitude toward Mayers changed. Plaintiff's Sur-Reply at 11.

Mayers also fails to establish the fourth prong of his prima facie case by showing that similarly-situated employees were treated more favorably, as is discussed in the disparate discipline section below.

11



(2)     Legitimate, Non-discriminatory Reason/Pretext

Even if Mayers has established a prima facie case of disparate treatment, Shaw has articulated a legitimate, non-discriminatory reason for terminating Mayers (that he failed to comply with LOTO policy).  As discussed above, Mayers himself believed that financial considerations and his status as a former Honeywell employee motivated Shaw's actions.  He fails to show that the reason given by Shaw for his termination is false or pretextual, or that race motivated Shaw's action.   Mayers testified that at the time the incident was investigated he admitted that he violated the policy.  Although he believes, in retrospect, that he did not do so, he fails to show that Shaw believed otherwise at the time Mayers was terminated or that the articulated reason for his termination was false or not the real reason for Shaw's action.  See, e.g., Hawkins v. PepsiCo, Inc., 203 F.3d 274 (4th Cir. 2000); Kun v. Berkeley County Gov't, 214 F. Supp.2d 559, 566 (D.S.C. 2001), aff'd, 32 Fed. Appx. 689, 2002 WL 570670 (4th Cir. Apr. 17, 2002)(employee cannot establish pretext by simply contesting the merits of the disciplinary actions).  Federal Courts "do not sit as a 'super-personnel department weighing the prudence of employment decisions' made by the defendants."   Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 272 (4th Cir. 2005)(citing DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir.1998)); see also Rowe v. Marley Co., 233 F.3d 825, 831 (4th Cir. 2000)("The decision to discharge [plaintiff] and retain [other employees] is the kind of business decision that we are reluctant to second-guess."); see also Swanson v. General Servs. Admin., 110 F.3d 1180, 1186 (5th Cir. 1997)(holding that "[t]he pretext question is not a question whether [the plaintiff] 'considered himself' late, but whether [the employer] considered [the plaintiff] late when he decide to charge [the plaintiff] with annual leave for his tardiness").



B.     Disparate Discipline

Mayers also appears to alleged that he was subjected to disparate discipline based on his race. Shaw contends that Mayers has not shown that a similarly-situated employee of another race was treated more favorably than Mayers was treated.

To establish a prima facie case of disparate discipline, a plaintiff must show "(1) that plaintiff engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin, and (2) that disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person." Lightner v. City of Wilmington, N.C., 545 F.3d 260, 264-265 (4th Cir. 2008)(citing Moore v. City of Charlotte, 754 F.2d 1100, 1105-06 (4th Cir. 1985)) (adapting the McDonnell Douglas framework for the employee discipline context).

(1)     Prima Facie Case

Mayers fails to establish a prima facie case of disparate discipline because he fails to show that a similarly-situated employee of another race engaged in prohibited conduct similar to him and was not terminated (or was treated more favorably). In making a comparison of a plaintiff's treatment to that of employees outside the protected group, a plaintiff must show that the comparables are similarly situated in all relevant respects. See Mitchell v. Toledo Hospital, 964 F.2d 577 (6th Cir. 1992); see also Lanear v. Safeway Grocery, 843 F.2d 298 (8th Cir. 1988)(plaintiff must prove that he and non-protected employee were similarly situated in all respects and the other employee's acts were of comparable seriousness to his own); see also Heyward v. Monroe, 166 F.3d 332, 1998 WL 841494 (4th Cir. Dec. 7, 1998)(unpublished)(employees similarly situated only if they "dealt with the same supervisor, [were] subject to the same standards and...engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's

13



treatment of them for it." (citations omitted)), cert. denied, 527 U.S. 1036 (1999); Smith v. Stratus Computer, Inc., 40 F.3d 11 (1st Cir. 1994)(in disparate treatment cases, employees must be similar in "all relevant aspects" including performance, qualifications, and conduct)(citation omitted), cert. denied, 514 U.S. 1108 (1995); see also Bogren v. Minnesota, 236 F.3d 399, 405 (8th Cir. 2000)(finding that probationary and non-probationary employees are not similarly situated), cert. denied, 534 U.S. 816 (2001).

At his deposition, Mayers asserted that Shaw treated white mechanic Eddie Ripperdan (who committed a LOTO violation) better than him. Mayers admitted, however, that Ripperdan was a trainee and Mayers was responsible for training him. Plaintiff's Dep. 39-40. Additionally, Mayers produced no evidence showing, or even inferring that McCray, Jones, or Newberry knew that Ripperdan allegedly engaged in such conduct.

Mayers also appears to allege that Shaw treated Mullins more favorably than him. He acknowledged, however, that Shaw demoted Mullins and ultimately fired Mullins. Further, Mayers testified that he did not know why Mullins was disciplined (i.e. he had no knowledge that it was for a LOTO violation). See Plaintiff Dep. 50.

Mayers alleges that John Simenot ("Simenot"), a white mechanic, was treated more favorably because he was merely "sent out" for a mechanical lockout problem. He admits, however, that Simenot returned when it was determined it was not a LOTO violation. Mayers stated that he had "no idea" why Shaw determined it was not a LOTO violation. Plaintiff Dep. 40-41. Wisner, the current Human Resources Manager at Shaw's St. Andrews Road, facility, however, states that Simenot never violated LOTO procedures. Mayers also testified that he had "no idea" whether Shaw ever treated Simenot more favorably based on race. Plaintiff Dep. 42.

14



Mayers alleges that Shaw did not fire machine operator Jackie Robinson, who allegedly committed a LOTO violation on the same machine that Mayers was repairing when he violated the LOTO procedures. Plaintiff Dep. 59-62. Robinson, however, is also African-American. Plaintiff Dep. 52.

In his sur-reply, Mayers for the first time argues that a white male Shaw employee named "Andy" was treated more favorably than he was treated. He further argued this at the hearing before the undersigned. The incident in question occurred in October 2010 (more than two years after Mayers was terminated from Shaw). Mayers asserts that Andy, a Mechanic II, also failed to follow the proper LOTO procedures, but was not terminated. Shaw argues that Andy is not a similarly-situated employee because his safety violation was not as severe as the safety violation committed by Mayers, and because Andy and Mayers did not share the same supervisor, manager, and human resources director.

Mayers fails to show that he and Andy are similarly situated. Andy's supervisor, manager, and human resources director were different than those Mayers had. The decision maker was different. The manager for Andy is listed as "Debra" on Shaw's investigative notes. Doc. 52-1, p. 26 (Mayers Def. Ex. 0215). The investigative notes indicate that Andy stated that LOTO was not done because there was no place to put a lock and if there was a LOTO point he was not aware of it. Id. Andy was given a Permanent Final Warning for the incident. This action was signed by Darryl Brown as Supervisor, Debra as Department Manager, and Chris Wisner as Human Resources Manager. Doc. 52-1, p. 30 (Mayers Def. Ex. 0221). Shaw provides that Andy turned off the power and air to his machine and "brought the system to zero energy," but failed to lock it out because he did not believe there was a place to put the lock. See Defendant's Supp. Response, Ex. A. Shaw

15



contends that by completely shutting down the power to his machine before attempting to repair it, Andy eliminated the potential for serious injury. Mayers' panel, however, was still running which could have resulted in serious injury.

        (2)       <u>Legitimate, Non-discriminatory Reason/Pretext</u>

Even if Mayers can establish a prima facie case of disparate discipline, Shaw has articulated a legitimate, non-discriminatory reason (violation of the LOTO policy) for its disciplinary action  As discussed above, Mayers fails to show that this reason is pretext for discrimination.

## **CONCLUSION**

Based on the foregoing, it is recommended that Defendant's motion for summary judgment (Doc. 39) be **granted**. Further, **IT IS ORDERED** that the Clerk of Court is directed to place under seal the exhibits of Document 46, Document 47, and Document 51.

                                                                Joseph R. McCrorey
                                                               United States Magistrate Judge

November 2, 2011
Columbia, South Carolina

                        **The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).