IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Earnest Mayers, | C/A No. 3:09-2635-MBS-JRM |
| Plaintiff, | |
| vs. | **ORDER AND OPINION** |
| Shaw Industries, | |
| Defendant. | |

Plaintiff Earnest M. Mayers ("Plaintiff") filed a pro se complaint against his former employer, Defendant Shaw Industries ("Defendant"), alleging race discrimination, retaliation, and race harassment in violation of Title VII of the Civil Rights Act of 1964, §§ 42 U.S.C. 2000(e) et seq.; and age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. In accordance with 28 U.S.C. § 636(b)(1) and Local Rule 73.02(B)(2)(g), D.S.C., this matter was referred to United States Magistrate Judge Joseph R. McCrorey for pretrial handling.

**Factual Background**

Plaintiff was employed by Defendant as a maintenance mechanic at its facility in Irmo, South Carolina, for approximately thirty-three years. At all times relevant to this action, Ronnie Floyd ("Floyd") was Plaintiff's foreman; Everett Newberry ("Newberry") was Plaintiff's work area supervisor; Larry Jones ("Jones") was Plaintiff's manager; and Jonnie "Butch" McCray ("McCray") was the Senior Human Resources Manager at the facility. Plaintiff and other employees were responsible for following "lock out tag out" procedures, known as "LOTO," when operating equipment at the facility. Plaintiff had attended trainings on LOTO procedures.

Plaintiff alleged that Newberry often instructed him to violate LOTO procedures and that he had observed Newberry himself violating LOTO procedures.

In early 2005, Plaintiff reported to Jones that there were LOTO violations in his work area. Jones indicated to him that those violations, involving leaving certain machines running, were permitted due to a "production issue." Subsequently, Plaintiff called Defendant's hotline to report the safety violations. Plaintiff alleges that after this complaint, upper management, specifically McCray and Newberry, started to harass him and create a hostile work environment for him because he complained about Newberry's work area. Plaintiff alleges that Newberry asked another employee to follow Plaintiff and take note of his actions. Plaintiff alleges that McCray would not let him take breaks, use his cell phone or attend a relative's funeral, even though other workers were allowed these privileges. Plaintiff also stated that he was not given overtime hours, which would have resulted in more pay and more vacation time. At some point, Newberry indicated to McCray that he did not want Plaintiff to work in his area any more, but Plaintiff remained in Newberry's area. In 2007, Plaintiff was shown a diversity training video in which an actor uttered a racial slur.

On January 10, 2008, Plaintiff was working on a machinery panel where the LOTO safety procedures had not been followed. Specifically, the machine was still running as Plaintiff was repairing the panel. The proper procedure would have been to turn off the power and lock out the machine before working on repairs. Jackie Robinson, a black woman serving as an operator, had also been working on the panel. Newberry noticed this and confronted Plaintiff, asking him why he violated LOTO procedures. Plaintiff replied that he was doing what he has been told to do. Plaintiff alleges that Newberry called him the "n" word during this confrontation and that management often used the "n" word in the workplace. Newberry

reported the LOTO violation to McCray, who conducted an investigation by interviewing Plaintiff, Newberry, Robinson, and other individuals who would have information about the incident. During the investigation, Plaintiff admitted that he was at fault for not properly locking out the machine in violation of the LOTO procedures. Plaintiff contends that he admitted fault only because McCray was pounding on the desk and upper management wanted him to admit fault.

McCray concluded that Plaintiff knowingly violated the LOTO procedures and that the violation was serious enough to warrant immediate termination due to the potential injuries and fatalities that such a violation could cause. McCray presented the investigation findings to Jones and recommended that Plaintiff be immediately terminated. On January 22, 2008, Defendant fired Plaintiff on the basis of the LOTO violation. Other persons working on the same panel, including Jackie Robinson, were not terminated.

On March 20, 2008, Plaintiff filed a charge of discrimination with the South Carolina Human Affairs Commission ("SCHAC") against Defendant for discrimination based on race, retaliation, and age. In Plaintiff's charge form, he alleged that Defendant discharged him for violating a LOTO procedure despite the fact that Plaintiff did not disobey the policy. Plaintiff also stated that similarly situated white employees who disobeyed the LOTO procedures were not discharged. He also stated that he is generally treated more poorly than similarly situated white employees. Plaintiff did not allege in his charge that Newberry called him the "n" word during their confrontation regarding the LOTO violation. Plaintiff's charge remained pending for over 180 days, after which the Equal Employment Opportunity Commission ("EEOC") issued Plaintiff a notice of right to sue letter.

On October 8, 2009, Plaintiff filed the instant complaint alleging age discrimination and race discrimination based on unlawful termination, retaliation, and harassment. On May 3, 2010, Defendant filed a motion to dismiss. On December 14, 2010, United States District Judge Cameron M. Currie dismissed Plaintiff's claims under the ADEA and his Title VII claims for race-based retaliation and harassment, leaving only Plaintiff's Title VII claim is for race-based termination and related disparate discipline. The parties conducted pre-trial discovery in this matter, including exchanging written discovery. Defendant's counsel deposed Plaintiff and obtained an affidavit from McCray regarding Plaintiff's termination.

In his deposition, Plaintiff stated that the only manager that was discriminating against him based on his race was McCray. Plaintiff stated that he believed McCray was racist towards him because of the way he treated Plaintiff, including that Plaintiff was not permitted to take a break or use a cell phone and that McCray threatened to call the police on Plaintiff after Plaintiff called Defendant's hotline to report the safety violation. Plaintiff stated that he did not know if McCray treated white mechanics better than he treated black mechanics. When asked by Defendant's counsel if Plaintiff thought it mattered to Newberry that Plaintiff was African-American, Plaintiff's response was, "I think it mattered to Mr. Newberry [sic] that I reported a safety issue. That's it." (notation found in original deposition). Plaintiff stated that he thought Newberry reported the LOTO violation because he was retaliating against Plaintiff for calling Defendant's hotline to complain about LOTO violations occurring in Newberry's work area.

Plaintiff testified that James Stockman, a white mechanic, was allowed to work more overtime than he was; however, Plaintiff indicated that when he brought this to management's attention, he was assigned more overtime. Plaintiff testified that this was not a black-white issue, but a favoritism issue. Plaintiff also alleged that Jim Mullins, a white mechanic, was treated

4

more favorably than he was, because Mullins was transferred to another area and Plaintiff's request for a similar transfer was denied.  Plaintiff also alleged that Eddie Ripperdan, a white mechanic who committed a LOTO violation, was treated better than he, because Ripperdan was not terminated.  Plaintiff also alleged that Mr. Simneot, a white mechanic who committed a mechanical lockout violation of some sort, was disciplined less severely than he because Simneot was only suspended.  Plaintiff also alleged that Jackie Robinson, a black woman serving as operator on the machine panel at issue in the case, was actually the individual responsible for the LOTO violation that occurred in this case, and that she should have been terminated.  Lastly, Plaintiff testified that a white employee named Andy had committed a LOTO violation and was not terminated.  Plaintiff did not take any depositions during discovery.

On June 6, 2011, Defendant filed a motion for summary judgment.  Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised that a failure to respond to Defendant's motion for summary judgment could result in a dismissal of his complaint.  On June 17, 2011, Plaintiff filed a response, to which Defendant filed a reply on August 1, 2011.  Plaintiff filed a sur-reply on August 26, 2011.  On October 21, 2011, the case was reassigned to this court.  On October 26, 2011, a hearing on Defendant's motion for summary judgment was held before the Magistrate Judge.  On October 28, 2011, Defendant filed a supplemental response to oral argument.  On November 2, 2011, the Magistrate Judge filed a Report and Recommendation in which he recommended granting Defendant's motion for summary judgment.  On November 14, 2011, Plaintiff filed Objections to the Report and Recommendation to which Defendant filed a reply on November 28, 2011.

**Discussion**

*Standard of Review*

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the report or specified proposed findings or recommendations to which an objection is made. The court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The court may also receive further evidence or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248-49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. Newport News Holdings Corp. v. Virtual City Vision, 650 F.3d 423, 434 (4th Cir. 2011).

Under the McDonnell Douglas framework, in order for Plaintiff to succeed in a Title VII discriminatory termination case, Plaintiff must first establish a prima facie case by offering proof that 1) he was a member of a protected class; 2) he was performing his job in a satisfactory manner; 3) he was subjected to an adverse employment action; and 4) the alleged adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination. McDonnell Douglas v. Green, 411 U.S. 792 (1973). As to the fourth prong, Plaintiff can create an inference of discrimination by showing that similarly-situated employees were not terminated.

Once Plaintiff has established a prima facie case of unlawful termination, Defendant has the burden of production as to articulating a legitimate non-discriminatory reason for the termination. If Defendant articulates a non-discriminatory reason, Plaintiff must prove that the proffered reasons were either pretextual or that the real reason for the termination was discriminatory. See Reeves v. Sanderson Plumbing Products Inc., 530 U.S. 133, 147 (2000).

A plaintiff can survive a motion for summary judgment in a Title VII discriminatory termination case in two ways. First, Plaintiff can offer "direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse decision." Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005). This method requires evidence of conduct or statements that both reflect the discriminatory attitude and that bear directly on the contested employment decision. Kubicko v. Ogden Logistics Services, 181 F.3d 544, 554 (4th Cir. 1999). Second, Plaintiff can use the McDonnell-Douglas pretext framework and sufficiently rebut Defendant's legitimate non-discriminatory reason to raise a genuine issue of material fact as to whether Defendant's decision to terminate the plaintiff was based on race. Diamond, 416 F.3d at 318.

*Analysis*

The Magistrate Judge's Findings

The Magistrate Judge analyzed Plaintiff's claim under a theory of unlawful termination and disparate discipline, based on race. The Magistrate Judge found that Plaintiff could not fulfill the prima facie case for unlawful termination or disparate discipline under Title VII, because he failed to show that his termination raised an inference of discrimination – prong four of the McDonnell-Douglas framework. Specifically, the Magistrate Judge found that there was no evidence that Defendant treated similarly-situated employees better than Plaintiff. The

Magistrate Judge also found that there was no material issue in dispute as to whether Plaintiff's termination was motivated by race, because Plaintiff himself admitted that his termination was not because of race. Rather, Plaintiff stated in his deposition that he was terminated because of a variety of other factors, including retaliation for reporting LOTO violations on Defendant's hotline.

The Magistrate Judge found that Mullins, a white mechanic, who was transferred into an area that Plaintiff had requested to be transferred to, was not similarly situated to Plaintiff. Mullins was being demoted from Mechanic IV to Mechanic III and was transferred to the area as a result. Plaintiff has not presented any specifics concerning his request for a transfer and has not shown that an opening was available at the time of his request, which was two months prior to Mullins' transfer.

The Magistrate Judge found that although Plaintiff alleged he was treated poorly compared to other employees in that he was not able to take breaks, use his cell phone, or take funeral leave, Plaintiff does not allege that he was being treated poorly because of his race. Plaintiff appeared to assert that he was the only one at the plant who was not given these privileges and that employees of all races were treated better than he.

In addition, the Magistrate Judge found unavailing Plaintiff's argument that Defendant treated Eddie Ripperdan, a white mechanic who committed a LOTO violation, better than he was treated. The Magistrate Judge found that Ripperdan was not similarly situated to Plaintiff. Ripperdan was a trainee whom Plaintiff was responsible for training; therefore, the expectations of Ripperdan were lower. The Magistrate Judge also found that Plaintiff's allegation that Defendant treated John Simenot, a white mechanic who was only suspended for a LOTO problem, better than he was also unavailing because Simenot was ultimately found to have not

committed a LOTO violation, unlike Plaintiff.  The Magistrate Judge also found that Plaintiff's allegation that Defendant treated Jackie Robinson, the operator who was working on the machine panel at the same time Plaintiff was during the incident in question, better than he was treated did not raise an inference of discrimination, because Robinson was also African-American.

The Magistrate Judge also found that Plaintiff's allegation that Defendant treated a white employee named "Andy," who also committed a LOTO violation, better than he was treated was unavailing.  Andy's LOTO violation was less severe than Plaintiff's because Andy turned the power and air on his machine off and brought the system to zero energy, and then failed to lock it out, which eliminated the potential for the kind of serious injuries that Plaintiff's LOTO violation could have caused.  Accordingly, Andy was given a final warning and not terminated.

The Magistrate Judge also found that Plaintiff's allegation that Defendant treated James Stockman, a white mechanic who was allowed to work more overtime than Plaintiff, better than he was treated was unavailing, because when Plaintiff raised this issue to management's attention, he was assigned more overtime.  Further, Plaintiff testified that he did not think assigning more overtime to Stockman was a black-white issue, but rather favoritism for those employees who often asked for overtime versus those who relied on the default overtime distribution system.

The Magistrate Judge also addressed Plaintiff's allegation that Newberry used the "n" word during his confrontation with Plaintiff.  The Magistrate Judge noted that Plaintiff did not allege this fact in his complaint nor did he testify to this fact in his deposition, and did not assert this claim until he untimely filed a sur-reply brief.  Nonetheless, the Magistrate Judge considered the allegation and found that it did not raise an inference that Plaintiff's termination was based on race, because Plaintiff himself stated that Newberry was not motivated by race in his

treatment of Plaintiff.  The Magistrate Judge noted that Plaintiff was asked whether he thought it mattered to Newberry that Plaintiff was black and he responded "I think it mattered to Mr. Newberry [] that I reported a safety issue.  That's it."  Plaintiff also testified with regard to Newberry that "it wasn't about race" and that "I still think it goes [back] to the 800 number," referring to Plaintiff's call to Defendant's hotline.  Additionally, Plaintiff stated in his sur-reply that he was fired in retaliation for putting Newberry's job in danger when he called Defendant's hotline number to complain about the safety conditions of Newberry's area.

The Magistrate Judge found that even if Plaintiff has established a prima facie case, he has not provided evidence rebutting Defendant's legitimate non-discriminatory reason.  The Magistrate Judge found that Defendant sufficiently alleged a legitimate non-discriminatory reason for termination Plaintiff – that Plaintiff failed to comply with a LOTO procedure and admitted to the violation.  The Magistrate Judge noted that whether or not Plaintiff actually violated the LOTO procedure is not relevant, but rather what Defendant believed had transpired and had motivated it to terminate Plaintiff, is relevant.  The Magistrate Judge noted that in Plaintiff's meeting with McCray, Plaintiff admitted to committing the violation.  Therefore, even though Plaintiff in the instant action alleges that he did not commit the LOTO violation and that others are actually responsible for what happened during the incident, this has no bearing on Defendant's legitimate non-discriminatory reason for firing him based on the information Plaintiff provided during the investigation.

Furthermore, based on the same reasons cited above as to why Plaintiff fails to raise an inference of discriminatory intent, the Magistrate Judge found that Plaintiff had not shown why Defendant's reason for terminating him was pretextual or that race actually motivated Defendant's decision.  Plaintiff's arguments for pretext comprise the same arguments he alleged

under the fourth prong of the prima facie case; that Defendant treated similarly situated employees better than they treated Plaintiff. The Magistrate Judge found that Plaintiff's argument had no merit and was insufficient to show pretext.

Although the Magistrate Judge analyzed Plaintiff's claim under a theory of race-based termination and disparate discipline, the Magistrate Judge's analysis was largely the same for both claims and focused on whether similarly situated employees were terminated for the same conduct as Plaintiff. Furthermore, as Judge Currie indicated, Plaintiff's allegation of disparate discipline is not a separate claim but is related to Plaintiff's claim that his termination was discriminatory. As such, the court has construed Plaintiff's claim as an unlawful race-based termination claim and reviewed it accordingly.

Plaintiff's Objections

Plaintiff's first objection focuses on what transpired the day of the LOTO violation. Plaintiff alleges that the machine in question was being worked on by operators, including Jackie Robinson, whose responsibility it was to perform the LOTO functions. Plaintiff stated that he was never trained on the LOTO procedures and it was not his responsibility to follow the procedures. Furthermore, Plaintiff alleges that the only reason he admitted to McCray that he committed the violation is because McCray was banging his hands on the table, so Plaintiff felt like he had no choice but to admit fault. Plaintiff's objection is without merit. As the Magistrate Judge discussed in his Report and Recommendation, the operative question is what information was Defendant presented at the time of the termination that motivated the decision. For whatever reason, Plaintiff admitted to McCray that he committed the LOTO violation, after which he was terminated. Plaintiff's argument, raised subsequent to his termination, that he was

not at fault for the LOTO violation has no bearing on Defendant's legitimate non-discriminatory reason for terminating him in the first instance.

Most of Plaintiff's other objections focus on the fact that similarly situated employees were not terminated, which was addressed by the Magistrate Judge in his Report and Recommendation. Plaintiff alleges that his termination was discriminatory because Robinson, the operator on the machine panel, should have been terminated for the LOTO violation as well but was not. Plaintiff's objection is without merit. It is difficult to infer racial discrimination towards Plaintiff based on the fact that Robinson was not disciplined for the same violation, because Robinson herself is African American. Furthermore, there is no evidence that Defendant found Robinson to have committed a LOTO violation; therefore, she is not similarly situated to Plaintiff so as to make a valid comparison. In his objections, Plaintiff re-alleges that Stockman, Mullin, Ripperdan, Simineot, and Andy were all similarly situated white employees that were treated more favorably than he was or disciplined less severely than he was. The court finds no merit in these objections. As discussed above, the Magistrate Judge thoroughly explained the reasons why each of these employees were treated more favorably than Plaintiff was. The court agrees with the Magistrate Judge's findings. The reasons for the disparate treatment were all justified by non-discriminatory facts distinguishing their situations from Plaintiff's situation. Thus, Plaintiff fails to show evidence that Defendant's reason for terminating Plaintiff was pretextual.

In his objections, Plaintiff also re-alleges that Newberry used the "n" word and that Newberry and McCray were racist towards Plaintiff. However, in the same objections, Plaintiff states that he was fired because of spite and revenge for complaining about unsafe working conditions. Plaintiff's allegations of the racist nature of Newberry and McCray are unavailing

because Plaintiff presents no evidence that race motivated the particular decision to terminate him. In fact, Plaintiff states the opposite in his deposition and objections – that he was not fired because of race but in retaliation for complaining to Defendant's hotline about safety condition. Furthermore, McCray was the decision maker who terminated Plaintiff and Plaintiff has presented no evidence to show that McCray harbored racist feelings towards Defendant or that McCray's decision to terminate Plaintiff was influenced by Newberry's alleged racial slur.

## Conclusion

After a thorough review of the Report and Recommendation, the Plaintiff's objections, Defendant's reply to the objections, the record in its entirety, and the applicable law, the court concurs with the Magistrate Judge's recommendation. Accordingly, Defendant's motion for summary judgment is granted.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour
Margaret B. Seymour
Chief United States District Judge

March 29, 2012
Columbia, South Carolina